UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAURA DAWSON,<br>  *Plaintiff*, | )<br>)<br>) | 3:25-CV-00210 (SVN) |
| v. | )<br>) | |
| STATE OF CONNECTICUT<br>DEPARTMENT OF CORRECTION,<br>  *Defendant*. | )<br>)<br>) | March 6, 2026 |

**RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

  In this removed employment discrimination action, Plaintiff Laura Dawson sues Defendant State of Connecticut Department of Correction ("DOC"), alleging that she experienced discrimination and retaliation upon returning to work from maternity leave. Defendant has now moved to dismiss the complaint for failure to state a claim upon which relief may be granted. Plaintiff opposes Defendant's motion. For the reasons discussed herein, Defendant's motion is GRANTED in full, though Plaintiff will be allowed leave to amend.

**I. FACTUAL BACKGROUND**

  A. Allegations of the Complaint

  Plaintiffs' complaint, ECF No. 1-1, alleges the following facts, which are taken as true for purposes of resolving Defendant's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

  Plaintiff is a licensed clinical social worker. Compl., ECF No. 1-1 ¶ 3. In December of 2013, she was hired by Defendant as a Parenting Social Worker. *Id.* On April 4, 2022, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") and accommodation under the Americans with Disabilities Act ("ADA") based on her pregnancy. *Id.* ¶ 4. Defendant approved these requests and granted Plaintiff leave through April 28, 2023. *Id.*

On May 1, 2023, Plaintiff returned to work. *Id.* Thereafter, Plaintiff alleges that she experienced discrimination and retaliation from her supervisor, non-party Jennifer Page, for taking leave due to her pregnancy. *Id.* ¶ 5. Plaintiff's complaint details various ways that she faced discrimination in the workplace. *See id.* ¶ 6. Specifically, Plaintiff alleges that despite following proper procedures, Page required her to provide additional proof before approving her requests for time off; Plaintiff was issued a written reprimand for being eleven minutes late to work in contravention to facility practice and despite being present on facility grounds; Plaintiff was forced to change her work schedule from a 7:00 a.m. start time to a 7:15 a.m. start time or face disciplinary action, and Page made her "jump through unnecessary hoops" to make this scheduling change; Page used inappropriate and offensive language, including profanity, to intimidate and silence Plaintiff; and Page used her vehicle to follow Plaintiff around the facility on several occasions. *Id.* ¶¶ 6(a)–(d), 6(n).

Additionally, in January of 2024, Plaintiff alleges that a warden incorrectly classified her as an "essential employee," rather than a "non-essential employee" for staffing purposes. *Id.* ¶ 6(e). Although Plaintiff provided the warden documentation showing that her position was "non-essential," this categorization was not corrected. *Id.*

On January 7, 2024, Plaintiff alleges that she informed Page that she would be using the inclement weather provisions of an unspecified contract, but this request was improperly denied. *Id.* ¶ 6(j). On January 26, 2024, Plaintiff alleges that non-party Deputy Warden Katherine Iozzia reprimanded her for tardiness despite the existence of hazardous driving conditions. *Id.* ¶ 6(k). Iozzia also docked Plaintiff for the two hours that she missed, despite initially telling Plaintiff that she could use her accrued time. *Id.* Additionally, Plaintiff alleges that she requested from both Page and Iozzia a letter of recommendation for another position within the DOC; they both initially

refused to provide the letter, but subsequently provided the letter right before the application deadline. *Id.* ¶ 6(l).

On January 30, 2024, Iozzia notified Plaintiff that she would serve as her supervisor and provided her with a list of expectations, which Plaintiff contends was unnecessary given her experience and record of "good work." *Id.* ¶ 6(f). Plaintiff alleges that Page required her to sign into a logbook when she arrived at work, while a male employee was not subjected to the same requirements. *Id.* ¶ 6(g). On February 2, 2024, Iozzia scrutinized Plaintiff's entries in the logbook. *Id.* ¶ 6(m). Plaintiff alleges that no other employee was subjected to this level of scrutiny. *Id.*

Moreover, Plaintiff's desk was moved closer to Page's desk for greater oversight, which Plaintiff contends was unwarranted. *Id.* ¶ 6(h). Page also allegedly referred to Plaintiff as "the employee," rather than by her name. *Id.* ¶ 6(i). On February 12, 2024, Page took a screenshot of one of Plaintiff's social media posts, which included a picture of Plaintiff and her minor child. *Id.* ¶ 6(o).

The Court infers from the complaint that Plaintiff became pregnant again and received certain accommodations in connection with this pregnancy, pursuant to a Pregnancy Work Fairness Act ("PWFA") agreement. *See id.* ¶ 6(p). Plaintiff alleges that on May 6, 2024, Iozzia emailed her a PWFA agreement detailing her assignment. *Id.* Iozzia "unlawfully disclosed" to unspecified persons other elements of the PWFA agreement regarding Plaintiff's job duties and contact with inmates during her pregnancy. *Id.* Two days later, on May 8, 2024, Plaintiff emailed Iozzia to coordinate delivery of a desk chair to Plaintiff's work location. *Id.* ¶ 6(q). In response, Iozzia forwarded this email to two male correction officers, disclosing Plaintiff's health information and work assignment details. *Id.* Plaintiff contends that such disclosure of her

pregnancy accommodation was unauthorized and improper, as the two officers were not involved with the PWFA agreement.  *Id.* ¶ 6(r).

As a result of these events, Plaintiff alleges that she has been (and will be) deprived of a variety of employment benefits, including wages and earnings, health and medical insurance, retirement and pension benefits, vacation and sick pay, and other benefits.  *Id.* ¶¶ 9–10.  Plaintiff further alleges that she has suffered emotional and psychological pain and suffering, mental anguish, humiliation and low self-esteem.  *Id.* ¶ 11.

B. Procedural History

Plaintiff alleges that she timely filed concurrent complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission.  *Id.* ¶ 8.  On November 27, 2024, she received a Release of Jurisdiction from the CHRO.  *Id.*

Plaintiff's complaint, originally filed in Connecticut Superior Court, asserts the following claims: (i) discrimination based on sex, in violation of the Connecticut Fair Employment Practices Act ("CFEPA") (Count One); (ii) discrimination based on pregnancy, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count Two); (iii) pregnancy discrimination in violation of CFEPA (Count Three); (iv) pregnancy discrimination in violation of the ADA (Count Four)[1]; and (v) retaliation based on Plaintiff's sex and pregnancy, in violation of CFEPA (Count Five).  As relief, Plaintiff seeks compensatory and equitable damages, including back pay and front pay, and attorney's fees.  *Id.* at 11.

---

[1] While Plaintiff's complaint alleges that Count Four brings a claim for pregnancy discrimination under the ADA, the parties' briefs treat Count Four as being brought under the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000gg.  *See* Def.'s Br., ECF No. 21-1 at 1; Pl.'s Opp. Br., ECF No. 29 at 1.  Thus, the Court will treat Count Four as being brought under the PDA.

Defendant timely removed the action to federal court, *see* Not. of Removal, ECF No. 1, and shortly thereafter filed a motion to dismiss the complaint. ECF No. 21. Plaintiff opposes this motion. ECF No. 29.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**III.   DISCUSSION**

Defendant's motion to dismiss is GRANTED.  First, the Court concludes that for purposes of her pregnancy and sex discrimination claims under CFEPA, Title VII and the PDA, Plaintiff has plausibly pleaded that she suffered an adverse employment action, but she has not plausibly alleged that such adverse action was due to her protected class.  Plaintiff's claims in Counts One through Four therefore fail.  Then, the Court concludes that Plaintiff's state law retaliation claim, Count Five, is not plausibly pleaded.

A.   <u>Counts One through Four: Sex and Pregnancy Discrimination</u>

Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's prohibition against sex discrimination applies to pregnancy discrimination through the PDA. *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015).  The PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).  The CFEPA further prohibits discrimination on the basis of, *inter alia*, sex or pregnancy. *See* Conn. Gen. Stat. §§ 46a-60(b)(1) and (7).

When analyzing employment discrimination claims brought pursuant to CFEPA, Title VII, and the PDA at the *summary judgment stage*, courts generally apply the three-step, burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024), *cert. denied sub nom. The Golub Corp. v. Elaine Bart*, 145 S. Ct. 173 (2024) (Title VII); *Green v. Cellco P'ship*, 218 F. Supp. 3d 157, 162 (D. Conn. 2016) (CFEPA claims); *Young*, 575 U.S. at 229 (PDA); *see also O'Reggio v. Comm'n on Hum. Rts. & Opportunities*, 350 Conn. 182, 190 (2024) (acknowledging well-settled precedent that

6

Connecticut anti-discrimination statutes should be interpreted in accordance with federal anti-discrimination law "and the analysis is the same under both") (citation omitted).

The *McDonnell Douglas* framework first requires the plaintiff to present a *prima facie* case of discrimination. The plaintiff must show: (1) membership of a protected group; (2) qualification for the job in question; (3) adverse employment action; and (4) circumstances supporting an inference of discrimination.[2] *See McDonell Douglas*, 411 U.S. at 800.

At the motion to dismiss stage, however, the standard differs. A plaintiff alleging employment discrimination need not plead specific facts establishing a *prima facie* case under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002). Rather, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief" and should "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512 (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This is because, as articulated by the U.S. Supreme Court, the *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement," and it governs "the employee's burden of presenting evidence that raises an inference of discrimination." *Swierkiewicz,* 534 U.S. at 510. Indeed, "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* at 512. Thus, in evaluating Defendant's motion to dismiss, the Court applies the "ordinary rules" for assessing the adequacy of Plaintiff's complaint. *Id.* at 511.

---

[2] The remaining steps of the *McDonnell Douglas* framework are as follows:

"If the plaintiff satisfies his *prima facie* case, a presumption arises that the adverse employment action was based on the consideration of impermissible factors, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged conduct. If the defendant articulates a legitimate, non-discriminatory reason for its action, the presumption generated by the *prima facie* case falls away, and the burden shifts back to the plaintiff to show discrimination or retaliation." *West v. City of Hartford*, 3:23-CV-01020 (SVN), 2025 WL 3687927, at *4 (D. Conn. Dec. 19, 2025) (internal citations omitted).

Although *Swierkiewicz* was decided prior to *Iqbal* and *Twombly*—and sets forth a slightly different pleading standard—courts have reconciled these three cases and applied them in the employment context. As the Second Circuit has explained, under *Iqbal* and *Twombly*, a plaintiff in an employment discrimination case is not required to plead a *prima facie* case under *McDonnell Douglas*, but must plead facts sufficient to state a claim that is plausible on its face. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84, 86 (2d Cir. 2015).

To state an employment discrimination claim under Title VII[3], the "plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id*. at 86. With respect to the adverse action element, the U.S. Supreme Court has clarified that an adverse action exists where a plaintiff experienced "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). The "terms or conditions" of employment for purposes of an employment discrimination claim cover more than "economic or tangible" factors and apply beyond a "narrow contractual sense." *Id.* at 354. Additionally, under *Muldrow*, the harm alleged need not be "significant, serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355 (cleaned up). As Justice Kavanaugh described in concurrence, illustrative examples of harm in the workplace may include a loss in "money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional relationships, networking opportunities, effects on family obligations, or the like." *Id.* at 365

---

[3] As noted above, sex discrimination and pregnancy discrimination claims brought under the PDA and CFEPA are analyzed under the same analytical framework as Title VII claims. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019); *Ayantola v. Bd. of Trs. of Tech. Colleges*, 116 Conn. App. 531, 536 (2009) (noting that Connecticut courts look to federal law for guidance in interpreting the provisions of CFEPA).

(Kavanaugh, J., concurring). "That said, even under *Muldrow*, some workplace events that are unpleasant are not necessarily adverse employment actions." *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024).

As to the second element of an employment discrimination claim, the plaintiff must show that the plaintiff's race, color, religion, sex or national origin—or, in the case of the PDA, pregnancy—was a "substantial or motivating factor contributing to the employer's decision to take the action." *Vega*, 801 F.3d at 85 (internal quotations omitted). The plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that either directly show discrimination or facts that indirectly give rise to a plausible inference of discrimination. *Id.* at 87 (citing *Littlejohn v. City of New York,* 795 F.3d 297, 310 (2d Cir. 2015) (providing that factual allegations should "suggest an inference of discriminatory motivation")).

Defendant challenges both elements here, contending that Plaintiff fails to plausibly plead an adverse action and fails to show that any adverse action was taken because of Plaintiff's sex or pregnancy. Applying these principles here, the Court finds that Plaintiff has plausibly pleaded that she suffered an adverse employment action, but she has not plausibly alleged that she experienced such action *because of* her sex or pregnancy.

1. *Adverse Action*

First, the Court holds that Plaintiff's complaint includes sufficient facts to plausibly allege that she experienced at least some forms of adverse employment action. The complaint includes numerous examples of disadvantageous changes to Plaintiff's conditions of employment following her return from maternity leave, including changes impacting her schedule, pay, supervision and

advancement opportunities.[4]  By way of example, Plaintiff alleges that Iozzia docked two of her work hours despite representing that she could use accrued time, ECF No. 1-1 ¶ 6(k), and Page improperly denied Plaintiff the opportunity to use the "inclement weather" provisions of the contract, *id.* ¶ 6(j), which suggest that Plaintiff lost wages.  Additionally, Plaintiff alleges that she was twice denied a letter of recommendation to apply for another position within the DOC, and that the letter was ultimately provided only on the eve of the deadline.  *Id.* ¶ 6(l).  Although Plaintiff does not provide any details regarding this position and application process, such conduct could be reasonably viewed as obstructing Plaintiff's ability to advance professionally within the organization.  These allegations are sufficient to demonstrate that Plaintiff experienced harm under *Muldrow*, for purposes of a motion to dismiss.

The Court rejects Defendant's suggestions that Plaintiff has not alleged she suffered *any* harm, and that she was required to allege she was terminated or experienced a change in her wages, benefits, or salary in order to plead an adverse action.  *See* ECF No. 21-1 at 8–9.  This is a narrow and outdated construction of an adverse employment action after *Muldrow*.  The U.S. Supreme Court has made clear that a plaintiff need only allege "*some* 'disadvantageous' change in an employment term or condition." *Muldrow*, 601 U.S. at 354 (citation omitted) (emphasis added).  Drawing all reasonable inferences in Plaintiff's favor, as the Court must at the motion to dismiss stage, Plaintiff has adequately pleaded that she suffered disadvantageous changes in her

---

[4] The Court acknowledges that not all of Plaintiff's theories underpinning her employment discrimination claim may demonstrate an adverse employment action.  For example, Plaintiff alleges that she was incorrectly classified as an "essential employee," ECF No. 1-1 ¶ 6(e), but she provides no details illustrating how this classification negatively impacted the terms of her employment.  Nor does she explain how Page's taking of a screenshot of one of Plaintiff's social media postings that included a photograph of Plaintiff and her minor child could constitute an adverse action.  Additionally, the Court questions whether Plaintiff's claims of heightened surveillance or otherwise close observation by her supervisors may be sufficient to state an adverse action.  *See, e.g., Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 334 (S.D.N.Y. 2020) ("close monitoring or observation by an employer is not an adverse action") (collecting cases).  *Smith*, however, cites to and relies on cases that pre-date *Muldrow*.  As it is unclear whether certain conduct previously deemed to not qualify as adverse action remains disqualified in the post-*Muldrow* landscape, the Court will allow these allegations to proceed and be further developed in discovery.

employment. Plaintiff may or may not prevail on these claims at the summary judgment stage, but her allegations suffice at this juncture.

### 2. *Causation*

But the Court concludes that Plaintiff has not plausibly alleged that such action was taken *because of* her sex or pregnancy.

As discussed above, at the pleadings stage of an employment discrimination case, a plaintiff must meet the *minimal* burden of alleging facts suggesting an inference of discriminatory motivation. *Vega*, 801 F.3d at 85. Here, beyond Plaintiff's conclusory allegations that she faced discrimination on the basis of her sex or pregnancy, the complaint does not allege any specific facts linking the challenged conduct to her protected status.

In her opposition brief, Plaintiff points to two allegations in the complaint in an effort to establish a causal connection, but neither suffices. First, she alleges that she was required to sign into a logbook upon arrival to work, whereas a male employee was not. *See* ECF No. 1-1 ¶ 6(g). While an inference of discrimination can be drawn when "similarly situated" employees are treated differently, *see Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 63–64 (2d Cir. 1997), the complaint contains no factual allegations describing the male employee's job title, responsibilities, discipline standards, or other information that would permit an inference that he was similarly situated to Plaintiff "in all material respects." *Id.* at 64; *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (to show that a plaintiff is similarly situated in all material respects to a comparator, she must allege that the comparators were "subject to the same workplace standards" and that the comparators had engaged in similar conduct, but were treated differently). While Plaintiff need not allege that the comparators' cases are identical, she has failed to allege a "reasonably close resemblance of the facts and circumstances" between herself and the male

11

employee who was not required to sign into a logbook. *See id.* at 40. Without this context, Plaintiff's complaint does not support an inference of discrimination based on this allegation.

Second, Plaintiff alleges in the complaint that her pregnancy and workstation information were disclosed to two male correction officers. ECF No. 1-1 ¶ 6(r). But even accepting this allegation as true, Plaintiff cites to no authority for the proposition that disclosure of medical or private information supports an inference of discrimination. Nor does Plaintiff allege in her complaint any facts from which the Court can infer that the disclosure was made due to her sex or pregnancy, or that she experienced any mistreatment or was otherwise worse off due to the alleged disclosure.[5]

Thus, Plaintiff's complaint does not plausibly allege that she experienced adverse employment action because of her sex or pregnancy, and her claims in Counts One through Four must be dismissed. However, the Court will allow her leave to amend the complaint.

B. Count Five: Retaliation

Finally, the Court concludes that Plaintiff has not plausibly pleaded a retaliation claim.

Under Connecticut law, employers are prohibited from discriminating against an employee on account of the employee's opposition to "any discriminatory employment practices." *Ayantola*, 116 Conn. App. at 536 (citing Conn. Gen. Stat. § 46a-51 *et seq.*). To establish a *prima facie* case of retaliation, a plaintiff must show four elements: (1) that she participated in a protected activity; (2) that the defendant knew of the protected activity; (3) that she suffered an adverse employment action; and (4) that there is a causal connection between the protected activity and the adverse

---

[5] The Court recognizes that temporal proximity between the time a plaintiff discloses her pregnancy and an adverse action can, in some instances, raise an inference of pregnancy-based discrimination. *See Lenzi*, 944 F.3d at 108. But Plaintiff does not argue that an inference of discrimination arises from the time period between her disclosure of her pregnancy and any alleged adverse actions. Indeed, Plaintiff does not even expressly allege that she disclosed a second pregnancy to Defendant, such that the Court could draw *any* inference of discriminatory intent from the allegations that Iozzia inappropriately disclosed elements of Plaintiff's PWFA agreement and shared information about Plaintiff's health information and work assignment with male correction officers.

12

employment action. *Id*. (citing *McMenemy v. Rochester*, 241 F.3d 279, 282–83 (2d Cir. 2001)). This standard is identical to the federal standard for retaliation claims under Title VII. *See Ayantola*, 116 Conn. App. at 536 (noting that Connecticut courts look to federal law for guidance in interpreting the provisions of CFEPA); *see also Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (articulating standard for retaliation claims).

The Court first notes that Plaintiff's complaint does not use the words "protected activity" to describe any particular activity in which she claims to have engaged. While she makes a vague reference in paragraph five to experiencing "discrimination and retaliation" from Page "for being out on leave due to her pregnancy," ECF No. 1-1 ¶ 5, she does not identify the taking of leave as protected activity. Instead, in her retaliation allegations, she simply states that Defendant "retaliated against Plaintiff sex and disability (*sic*.) in violation of Connecticut General Statutes § 46a-60(b)(4)." ECF No. 1-1 at 10, ¶ 7. In her opposition to Defendant's motion to dismiss, Plaintiff clarifies that she is pursuing a claim of retaliation based on her taking of medical leave protected under the federal FMLA. *See* ECF No. 29 at 11 (citing 29 U.S.C. § 2615(a)(2)). Yet the complaint alleges a "State Law Claim" for retaliation—not a federal claim—and cites to the CFEPA, instead of to the federal FMLA or the Connecticut FMLA statute, Conn. Gen. Stat. § 31-51kk to 31-51qq ("CTFMLA"). ECF No. 1-1 at 9.

Based on these confusing allegations and representations, the Court cannot discern what type of retaliation claim Plaintiff is intending to pursue (retaliation based on sex and disability, as alleged in the complaint, or based on protected activity of taking medical leave, as asserted in the opposition to the motion to dismiss?), under what statute (the CFEPA, federal FMLA, or CTFMLA?). Nor can Plaintiff amend her complaint in her opposition to Defendant's motion to dismiss to fashion a new theory of Connecticut (or federal) FMLA retaliation that is not pleaded

13

in the complaint. *See Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) ("It is well-settled that a plaintiff cannot amend his complaint by asserting new facts or theories for the first time in opposition to a motion to dismiss.") (cleaned up) (citing cases); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting new claim raised for the first time in the plaintiff's opposition to a motion to dismiss at the district court). Thus, the Court dismisses Plaintiff's "Retaliation - State Law Claim" in Count Five, with leave to replead.

## IV. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss, ECF No. 21, is **GRANTED IN FULL**. Plaintiff shall file an amended complaint by **March 26, 2026**. Any future requests to amend after that date will be subject to the good cause standard set forth in Federal Rule of Civil Procedure 16. Defendant's answer or other response to the amended complaint shall be due fourteen days after the filing of the amended complaint. *See* Fed. R. Civ. P. 15(a)(3).

**SO ORDERED** at Hartford, Connecticut, this 6th day of March, 2026.

                                          /s/ Sarala V. Nagala
                                          SARALA V. NAGALA
                                          UNITED STATES DISTRICT JUDGE